# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**************************************

**DAVID PAIVA,**          *

        **Plaintiff,**    *

**v.**                 *

                  *

**THE BANK OF NEW YORK MELLON**   *

**FKA THE BANK OF NEW YORK AS**   *

**TRUSTEE FOR THE CERTIFICATE**   *     **Civil Docket No.: 14-cv-14531-ADB**

**HOLDERS CWALT, INC.**         *

**ALTERNATIVE LOAN TRUST**      *

**2005-48T1, MORTGAGE**          *

**PASS-THROUGH CERTIFICATES,**    *

**SERIES 2005-48T1,**            *

           **Defendant.**     *

**************************************

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, The Bank of New York Mellon FKA the Bank of New York as Trustee for the certificate holders CWALT, Inc. Alternative Loan Trust 2005-48T1, Mortgage Pass-Through Certificates, Series 2005-48T1, ("BONYM"), by and through its attorneys, hereby submit this Memorandum of Law in support of its Motion for Summary Judgment on all claims set forth in the Plaintiff's Complaint and on BONYM's Counterclaims.

## I.      INTRODUCTION

This action arises out of BONYM foreclosure of a mortgage given by the Plaintiff, David Paiva ("Paiva") to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. dated August 25, 2005, and recorded with the Bristol County (Northern District) Registry of Deeds in Book 15124, Page 187 ("Paiva Mortgage"). On April 28, 2014, BONYM conducted its lawful foreclosure sale of real property located at 16R Seymour Street, Berkley, MA (the "Property"). BONYM was the successful bidder at the foreclosure sale and is

the current owner of the Property by virtue of a Foreclosure Deed recorded with the Bristol

County (Northern District) Registry of Deeds in Book 21915, Page 112.[1]  As the current owner

of record, BONYM has a superior right to possession of the Property.

BONYM haa established through documentary evidence, including affidavits and

foreclosure documents, that no issue of material fact exists as to the claims raised in the

Plaintiff's Complaint, BONYM's legal title to the Property or as to the foreclosure conducted by

BONYM.[2]  For these reason and as set forth more fully below, BONYM is entitled to judgment

as a matter of law on the claims raised in in the Plaintiff's Complaint and on BONYM's

counterclaims.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

For a complete statement of undisputed facts, please refer to BONYM's Statement of

Undisputed Material Facts incorporated herein by reference.

## III.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a moving party is entitled to summary judgment when

"the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact." As the Court stated in *Celotex Corp. v. Catrett*,

> The plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion,
> against a party who fails to make a showing sufficient to establish
> the existence of an element essential to that party's case, and on
> which that party will bear the burden of proof at trial.

477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the Court must view the record and all

---

[1] *See* Exhibit U of the Affidavit of Residential Credit Solutions, Inc. ("RCS Affidavit") (a true and correct copy of
the Foreclosure Deed is attached thereto).
[2] *See Bank of New York v. Bailey*, 460 Mass. 327 (2011).

reasonable inferences in the light most favorable to the nonmoving party. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). Initially, the moving party must demonstrate "an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). If the moving party satisfies its burden, the burden then shifts to the nonmoving party to make "a competent demonstration that *every essential element* (emphasis added) of its claim or defense is at least trialworthy. An essential element of a claim or defense is not trialworthy unless there is sufficient evidence for a jury to return a verdict for the nonmoving party." *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991). The nonmoving party cannot rely on his pleadings and allegations to defeat the summary judgment motion, but must respond with specific facts evidenced through affidavits, admissions, answers to interrogatories and depositions, establishing the existence of "genuine issue for trial." Fed. R. Civ. P 56 (e)(2); *Celotex Corp.,* 477 U.S. at 324.

## IV. ARGUMENT

**1. <u>BONYM acquired title to the Property pursuant to its lawful foreclosure sale.</u>**

The record establishes that BONYM had standing to foreclose and conducted its foreclosure in compliance with Massachusetts statutory law and the Supreme Judicial Court's recent decisions on Massachusetts Foreclosure law.[3] The evidence establishes that BONYM was the mortgagee of record of the Paiva Mortgage and the holder of the Paiva Note at the time that it published its Notice of Sale and that all requisite notices were sent in compliance with G.L. c.

---

[3] *See U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011); *Eaton v. Federal Nat'l Mortg. Ass'n*, 462 Mass. 569 (2012); *Fed. Nat'l Mortg. Ass'n v. Hendricks*, 463 Mass. 635 (2012); *HSBC Bank USA, N.A. v. Matt*, 464 Mass. 193 (2013); *U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421 (2014).

244, §§ 14, 17B & 35A.[4]  As such, BONYM had the right to enforce the terms of the Paiva Note and Mortgage by selling the Property to itself at the foreclosure sale.

A.    **BONYM's foreclosure was conducted in strict compliance with Massachusetts Law.**

As held by the Supreme Judicial Court in *Ibanez*, the foreclosing entity must be able to demonstrate an interest in the mortgage prior to the first publication of the Notice of Sale.[5]  In Massachusetts, consistent with the express terms of the mortgage contract, and pursuant to G.L. c. 183, §21 and G.L. c. 244 §14, a mortgagee has the right to foreclose pursuant to the statutory power of sale as set forth in the mortgage.[6]  This authority was reaffirmed in *Ibanez*, which noted that "[u]nder the plain language of G.L. c. 183, §21, and G.L. c. 244, §14, the plaintiffs had the authority to exercise the power of sale contained in the … mortgages only if they were the assignees of the mortgages at the time of the notice of sale and the subsequent foreclosure sale."[7] Accordingly, under *Ibanez*, Nationstar must have held an interest in the Caceres Mortgage *prior* (emphasis added) to the first publication of the Notice of Mortgagee's Sale of Real Estate.[8]

In the case at hand, BONYM's strict compliance with Massachusetts law and the Paiva Mortgage is irrefutable.  The documentary evidence not only establishes that BONYM was the present holder of the Paiva Note and Mortgage at the time of the first publication of the Notice of Mortgagee's Sale, but also that it complied with all statutory requirements to foreclose the Paiva Mortgage.  BONYM was the assignee of the Paiva Mortgage as of February 18, 2011,

---

[4] *Ibanez*, 458 Mass. at 648; *Eaton*, 462 Mass. at 584-86; *see also Schumacher*, 467 Mass. at 430-31; *McKenna v. Wells Fargo Ban*k, *N.A.*, 693 F.3d 207, 215 (1st Cir. 2012).
[5] *Id.*
[6] G.L. c. 183, § 21 ("the mortgagee . . . may sell the mortgaged premises . . ."; G.L. c. 244, § 14 ("The mortgagee . . . or person authorized by the power of sale may, upon breach of condition and without action, do all the acts authorized or required by the power [of sale]").
[7] *Ibanez*, 458 Mass. at 648.
[8] *Id.*

approximately 3 years prior to publishing its Notice of Mortgagee's Sale of Real Estate.[9] Moreover, the RCS Affidavit as well as copies of the Notice of Mortgagee's Sale establish BONYM's compliance with G.L. c. 244, § 14 in providing notice of the foreclosure sale to the Plaintiff and publishing said notice for three consecutive weeks not less than twenty-one days before the foreclosure sale in a newspaper published or with a general circulation in the town where the Property is located.[10, 11]

Additionally, since BONYM's Notice of Mortgagee's Sale was first published on March 25, 2014, the legal standard set forth in *Eaton* is applicable.[12] Thus, along with establishing that BONYM was the present holder of the Paiva Mortgage at the time the Notice of Mortgagee's Sale was published, under *Eaton* BONYM must have either held the Paiva Note or acted as the authorized agent of the note holder at the time of the foreclosure.[13] Here, the Affidavit Regarding Note Secured by a Mortgage to be Foreclosed establishes that BONYM was the holder of the Paiva Note.[14] As the mortgagee of the Paiva Mortgage and holder of the Paiva Note at the time of the first Notice of Sale publication, BONYM had the right to foreclose and, as the evidence demonstrates, strictly complied with all statutory and contractual requirements in enforcing its rights under the power of sale set forth in the Paiva Mortgage.

---

[9] *See* Exhibits D and R of the RCS Affidavit (a true and correct copy of the Notice of Mortgagee's Sale of Real Estate is attached thereto and incorporated herein).

[10] G.L. c. 244, § 14.

[11] *See* Exhibits 5 and 6 of the Longoria Affidavit.

[12] *Eaton*, 462 Mass. at 588-89 ("[W]e exercise our discretion to hold that the interpretation of the term 'mortgagee' in G.L. c. 244, § 14, and related statutory provisions that we adopt in this opinion is to apply only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of this opinion.").

[13] *Id.* at 584-86 ("[W]e construe the term 'mortgagee' in G.L. c. 244, § 14, to mean a mortgagee who also holds the underlying mortgage note. . . we interpret G.L. c. 244, §§ 11–17C (and particularly § 14), and G.L. c. 183, § 21, to permit one who, although not the note holder himself, acts as the authorized agent of the note holder, to stand 'in the shoes' of the 'mortgagee' as the term is used in these provisions."); *see also McKenna*, 693 F.3d at 215.

[14] *See* Exhibit G of the Nationstar Affidavit.

BONYM has established that it complied with Massachusetts law and the terms of the Paiva Mortgage in conducting its foreclosure. As such, BONYM had the right to foreclose and to sell the Property to itself at the April 28, 2014, foreclosure sale. Thus, BONYM has met its burden of establishing that no material facts are in dispute as to BONYM's superior right to possession and judgment should enter in its favor.[15]

**B.     BONYM's foreclosure was conducted in strict compliance with the Power of Sale in the Paiva Mortgage.**

Paiva's assertion that the Notice of Right to Cure sent by Countrywide Home Loans Servicing, LP ("Countrywide"), predecessor-in-interest to BONYM, did not strictly comply with the power of sale incorporated into the Paiva mortgage is not only based on a misreading of the contract, but is also premised on a legal theory that was resoundingly rejected in *Schumacher*.

Applying a literal and hyper-technical enforcement standard is not supported by the binding legal precedent in the Commonwealth, Paiva attempts to create a discrepancy where substantively none exists. Countrywide's Notice of Right to Cure advised Paiva *inter alia* that the notice was sent by the servicer of the loan on behalf of the noteholder, that he had the right to cure the default after acceleration of the debt, and that Paiva had the right to bring a court action to assert the non-existence of a default or any other defense that he may have to acceleration of the debt. Paiva takes issue with the fact that the Notice of Right to Cure was sent by Countrywide and not by BONYM. However, nowhere in his pleadings does Paiva allege or establish how this alleged discrepancy materially affected his rights; confused or misled him

---

[15] *Bailey*, 460 Mass. at 336 ("In a summary process action for possession after foreclosure by sale, the plaintiff is required to make a *prima facie* showing that it obtained a deed to the property at issue and that the deed and affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded."); *Wayne Inv. Corp. v. Abbott*, 350 Mass. 775 (1966) (title defects can be raised as a defense in summary process); G.L. c. 239, §1 (summary process available to plaintiff only if foreclosure carried out according to law).

and/or resulted in a fundamentally unfair foreclosure. In fact, his actions establish that he understood his right to cure and challenge his default.[16]

At the outset, Paiva's claim fails as a matter of law. While an assignment of mortgage cannot become effective simply by declaring an "effective date"[17] – the BONYM Assignment referenced an "effective date" of May 14, 2008 – the assignment herein only became legally effective upon its execution on February 27, 2009.[18] As such, at the time Countrywide sent its Notice of Right to Cure, the mortgagee of the Paiva Mortgage was Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., not BONYM.

Initially, Paiva's argument mischaracterizes the notice provision in the Paiva Mortgage. Relying on a misreading of the Supreme Judicial Court's decision in *Schumacher*, Paiva grounds his argument on the incorrect premise that the notice provision of the Paiva Mortgage is part of the power of sale requiring strict compliance; a premise most recently undermined by *Schumacher*.[19]

In *Ibanez*, the Supreme Judicial Court reaffirmed the long-standing principle that one who forecloses under the power of sale must strictly comply with its terms.[20] Three years later in *Schumacher*, when faced with the issue of whether a right to cure notice is part of the power of sale requiring strict compliance, the Supreme Judicial Court rejected the former owner's attempt "to engraft" the notice requirements onto the power of sale.[21] In rendering its decision, the Supreme Judicial Court recognized that the exercise of the power of sale and the sending of a

---

[16] *Nationstar Mortgage, LLC v. Lopez*, No. 12H84CV00884, Boston Housing Ct., J. Winik (July 29, 2014).
[17] *Ibanez*, 458 Mass. at 653-54.
[18] *Id*.
[19] *See Schumacher*, 467 Mass. at 430-31; *see also Coelho v. Asset Acquisition and Resolution Entity, LLC*, 2014 WL 1281513,*3 (D.Mass. Mar. 31, 2014).
[20] 458 Mass. at 646-47.
[21] 467 Mass. at 430.

notice of right to cure serve contradictory purposes.[22]  The exercise of the power of sale results in the termination of a mortgagor's rights in the property, while the notice gives the mortgagor an opportunity to cure his default *prior* to the enforcement of the foreclosure.[23]  The Supreme Judicial Court made it clear that the sending of the notice giving the borrower an opportunity to cure is not an act relating to the foreclosure of a mortgage by the exercise of the power of sale mandating strict compliance.[24]

While *Schumacher* did not specifically address the sending of a default notice under the terms of the mortgage, its underlying premise, namely, that a notice sent to the borrower providing hum an opportunity to cure the default prior to the initiation of the foreclosure is a pre-foreclosure undertaking must extend to the notice provision in the mortgage contract.[25]  A notice that is identical in purpose and similar in requirements to a notice under G.L. c. 244, § 35A.[26]  Indeed, to not apply the holding in *Schumacher* to a notice sent pursuant to a paragraph 22 notice would in essence render the Supreme Judicial Court's decision meaningless and lead to an absurd result.  Accordingly, by logical extension, the provision in the Paiva Mortgage governing the sending of a default notice cannot constitute a term of the power of sale.[27]

The terms of the power of sale found in the statutes and incorporated in the Paiva Mortgage are "terms governing how the power of sale shall be exercised."[28]  It goes without

---

[22] *Id.* at 430-31.

[23] *Id*.

[24] *Id*.

[25] *See Lopez,* 12H84CV00884.

[26] *Id.*

[27] *Schumacher,* 467 Mass. at 431 ("A homeowner's right to cure a default is a preforeclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of foreclosure proceedings in the first instance . . . "); *see Pinti v. Emigrant Mortg. Co., Inc.,* 2013 WL 6797183, at *7-8 (Mass.Super. Oct. 31, 2013).

[28] *Pinti,* 2013 WL 6797183, at *7-8 (citing caselaw and rejecting borrowers' argument that the notice provision found in paragraph 22 of the mortgage is related to the power of sale requiring strict compliance in order to validate the foreclosure sale); *Federal Home Loan Mortg. Corp. v. Richard Ferdinand,* No. 1354SU0072, Norfolk District Ct., J. McGuinness (April 29, 2014) (the contractual notice provision is not part of the power of sale); *Cohen v. Federal Nat'l Mortg. Ass'n,* No. 13-40100-TSH, 2014 WL 1327457 (D.Mass. March 28, 2014) (rejecting

saying that "[n]ot all terms of the mortgage, however, relate to the exercise of the power of sale such that they constitute a term of the power."[29] Here, the notice provision found in paragraph 22 of the Paiva Mortgage, like the notice required by Section 35A, requires Paiva be provided information relating to his right to cure his default.[30] It is not a term relating to how the power of sale shall be exercised, thus, requiring strict compliance.[31] Judge O'Toole in *Coelho* recognized this when, adapting the holding and analysis of *Schumacher*, he explained:

> The *Ibanez* holding is limited to matters directly involving the statutory power of sale. For the same reason that the *Ibanez* holding does not apply to Section 35A, it does not apply to a contractual notice to cure provision. The contractual requirement as to the content of the notice to cure was not part of the statutory power of sale.[32]

In *Haskins v. Deutsche Bank Nat'l Trust Co.* the Massachusetts Appeals Court examined whether a notice of right to cure is deficient if the notice is sent by the mortgage servicing agent as opposed to the holder of the mortgage.[33] The *Haskins* court held that the purpose of the notice of right to cure is to "give the mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced."[34] To that end, the court reasoned that in order to accomplish its purpose, the notice should inform the borrower of the information necessary to contact the "party who holds all relevant information about the loan . . . and who holds authority to make decisions or otherwise take action . . . or undertake discussions of a

---

borrower's argument that foreclosing mortgagee must strictly comply with the notice provision in the mortgage); *Federal Nat'l Mortg. Ass'n v. Bain*, No. 12-SP-4224, Boston Housing Ct., J. Muirhead (March 31, 2014) (the notice provision in the mortgage is not part of the power of sale); *HSBC Bank v. Mack*, No. 1256SU363, Quincy District Ct., J. Coven (March 17, 2014) (same); *First Horizon Home Loans, a division of First Tennessee Bank Nat'l Ass'n v. Felix Aponte*, No. 1314SU-1, Chelsea District Ct., J. Wexler (May 7, 2014) (lack of credible evidence that discrepancy in language in the notice would have enabled the borrower to bring an affirmative action challenging the foreclosure before it occurred that had a reasonable chance at success).

[29] *Pinti,* 2013 WL 6797183, at *7-8.

[30] *Coelho*, 2014 WL 1281513, at *3.

[31] *See id*.

[32] *Id*.

[33] 19 N.E.3d 455, 456-57 (Mass.App.Ct. 2014).

[34] *Id.* at 461-62 (quoting *Schumacher*, 467 Mass. at 431).

possible modification of the loan."[35]   Regardless of the fact that the notice in *Haskins* was sent

by the mortgage servicer, as opposed to the holder of the mortgage, the court held that the notice

served its purpose and was not defective.[36]

Like the notice in *Haskins*, the Notice of Right to Cure in this case was sent by the

servicer of the loan.[37]   Even if the BONYM Assignment were effective as of May 14, 2008,

which it is not, this does not change the fact that Countrywide remained the servicer and the

party with the authority to take action with respect to the Paiva Mortgage Loan.   The sending of

a notice of right to cure by the servicer does not render the Notice of Right to Cure invalid, nor

the foreclosure void.[38]

Moreover, in *Pinti v. Emigrant Mortg. Co., Inc*., the Superior Court considered whether a

foreclosure was void because the notice of right to cure did not literally comply with the

language in the mortgage advising the borrowers of their right to challenge the default and

foreclosure.[39]   Instead of advising the borrowers of their right to bring a court action to assert the

nonexistence of a default, the notice of right to cure advised the borrowers that they had the right

to dispute the default "in any lawsuit for foreclosure and sale."[40]   Rejecting the borrowers'

hyper-technical challenge and argument that this discrepancy was a fatal defect that voided the

foreclosure, the court refused to apply a strict compliance standard, finding that "despite this

discrepancy, the notice substantially complied with this term of the mortgage."[41]   Focusing on

the substance of the notice, the court held:

> The notice informed the plaintiffs that they could contest the
> default, acceleration, foreclosure and sale; the only difference was

---

[35] *Id.*
[36] *Id*.
[37] *Id.* at 456-57.
[38] *Id.* at 463.
[39] 2013 WL 6797183, at *6.
[40] *Id.* at *8.
[41] *Id.*

the method by which they could do so. The court does not find this discrepancy sufficiently substantial as to render the foreclosure sale void, particularly where Emigrant strictly complied with all terms of the statutory power of sale contained in the Mortgage and the statutes relating to the foreclosure of mortgages by exercise of a power of sale, as well as all other terms contained in the Mortgage and G.L. c. 244, § 35A regarding the notice of default and right to cure.[42]

In *Fidelity Bank v. Krenisky*, the Appellate Court of Connecticut addressed this same issue.[43]  In *Krenisky*, the notice of default did not literally comply with the language in the mortgage advising the borrowers of their right to challenge the default and foreclosure.[44] Adopting the doctrine of substantial compliance and focusing on the equities of the parties, the Connecticut Appeals Court determined that literal enforcement was not warranted.[45]  Even though a discrepancy existed, the *Krenisky* court found that the foreclosing bank's notice of default adequately informed the borrowers of their right to contest the foreclosure and did not cause them any harm and, as a result, substantially complied with the notice provisions in the mortgage and was valid.[46]

The federal courts in Virginia, where like Massachusetts, foreclosures are also conducted non-judicially, have also addressed this issue and rejected challenges to acceleration letters for failure to track the notice language of the mortgage contract.[47]  In *Manatic v. Wells Fargo Bank, N.A.,* the plaintiff/borrower claimed the acceleration letter did not comply with the deed of trust

---

[42] *Id.*

[43] 72 Conn.App. 700, 713-15, 807 A.2d 968, 978-80 (Conn.App. 2002); *c.f. Federal Home Loan Mortg. Corp. v. LaPorta*, No. 1214-UP-335, Chelsea District Ct., J. LaMothe, Jr. (May 29, 2013) ("it is not appropriate to require the plaintiff to show technical compliance with all of the provisions of M.G.L. Chapter 35A in order to establish a prima fascia case.").

[44] 72 Conn.App. at 713-15.

[45] *Id.* at 712.

[46] *Id.* at 714.

[47] *Matanic v. Wells Fargo Bank, N.A.*, 2012 WL 4321634, at *4 (E.D.Va. Sept. 19, 2012); *Townsend v. Fed. Nat'l Mortg. Ass'n*, 923 F.Supp.2d 828, 835-36 (W.D.Va. 2013) (rejecting plaintiffs' argument that the difference in language is relevant because Virginia is a nonjudicial foreclosure state); *Johnson v. Fed. Home Loan Mortg. Corp.*, 2013 WL 3663058, at *3 (W.D.Va. July 12, 2013) (following *Manatic*).

because it did not track the language of the contract.[48]  The acceleration letter notified him that he had "the right to argue that you did keep your promises and agreements under the Mortgage Note, and to present any other defenses that you may have" instead of advising him that he had "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."[49]  The court rejected the plaintiff/borrower's argument finding that the language used in the acceleration letter was the functional equivalent of the language found in the contract and the failure to use the identical language is immaterial.[50]  The court found the acceleration letter "provided notice to the plaintiff of his rights in the event of foreclosure proceedings. Accordingly, the language used in the [a]cceleration letter fulfilled the lender's obligation under the Deed of Trust."[51]

Any argument that BONYM's Notice of Right to Cure misled Paiva is not supported by the record and would be based on a mechanical reading of the mortgage contract that ignores common sense and overlooks the more important issue of whether the notice satisfied the purpose and intent of the notice provision in the Paiva Mortgage.[52]  "Although generally 'contracts should be enforced as written,'" "'mechanistic compliance' with the letter of notice provisions" should not be required "if the particular circumstances of a case show that the actual notice received resulted in no prejudice and fairly apprised the noticed party of its contractual rights."[53]  Moreover, in interpreting the terms of a contract to determine if a breach occurred, "common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons."[54]

---

[48] 2012 WL 4321634, at *4.
[49] *Id.*
[50] *Id.* at *5.
[51] *Id.*
[52] *Coelho*, 2014 WL 1281513, at *3; *Pinti*, 2013 WL 6797183, at *8.
[53] *Mortg. Elec. Registration Sys., Inc. v. Goduto*, 110 Conn.App. 367, 375, 955 A.2d 544, 550 (Conn.App. 2008).
[54] *Fishman v. LaSalle Natl. Bank*, 247 F.3d 300, 302 (1st Cir. 2001).

In the case at hand, there is no evidence in the record establishing how this *de minimis* distinction between the notice provision in the Paiva Mortgage and the Notice of Right to Cure caused Paiva harm or prejudice. The record is devoid of any evidence that the fact the notice was sent by the servicer of the Paiva Mortgage Loan confused or misled Paiva or prevented him from curing his default.[55] Literal and strict enforcement of the Paiva Mortgage's notice provision is not only contrary to the law in the Commonwealth as clarified in *Schumacher*, it would serve no purpose, since Paiva has not established by even the scantest of evidence that he was unaware of his right to bring an action to challenge the foreclosure, and/or that he has been damaged by the fact that the Notice of Right to Cure was sent by the servicer of the loan,[56] as such, judgment should enter in favor of BONYM.

### C. G.L. c. 244, § 15A is not part of the power of sale and strict compliance is not required.

While in the case at hand, BONYM complied with G.L. c. 244, § 15A[57], even if the Court finds that BONYM did not comply, it does not render the foreclosure void as Section 15A is not part of the power of sale and, as such, strict compliance is not mandated.[58] Thus, the Plaintiff's challenge to BONYM's legal title and superior right to possession of the Property based on alleged non-compliance with Section 15A is without merit as a matter of law.

The Supreme Judicial Court recently examined whether a statute that falls outside of the foreclosure process could be considered part of the power of sale.[59] In *Schumacher*, the Defendant

---

[55] *Courtney v. U.S. Bank, N.A.*, 922 F.Supp.2d 171, 173 (D.Mass. 2013); *see Conti v. Wells Fargo Bank, N.A.,* 2012 WL 2094375, at *4 (Mass.Land Ct. June 11, 2012) (a discrepancy in the name of the mortgagee did not invalidate the notice of right to cure because it was clear that the borrower was not adversely affected by it and in fact cured the default and then commenced the present action).

[56] *Goduto*, 110 Conn.App. at 375.

[57] *See* Exhibit 3 of the Linehan Affidavit (a true and correct copy of the Notice of Conveyance is attached thereto and incorporated herein).

[58] *See Schumacher*, 467 Mass. at 430-31.

[59] *Id.*

challenged the validity of the Plaintiff's title based on an alleged failure to strictly comply with the notice requirement found in G.L. c. 244, § 35A.[60]  The Supreme Judicial Court held that Section 35A happens prior to the initiation of the foreclosure proceeding and, as such, cannot be one of the statutes relating to the foreclosure of mortgages by the exercise of a power of sale.[61]  The court reasoned that, as Section 35A is "a pre-foreclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of foreclosure proceedings," to include Section 35A as part of the power of sale would be contrary to the purpose of Section 35A[62]

Here, similar to how Section 35A is a pre-foreclosure undertaking, the requirements set forth in Section 15A are post-foreclosure activity which only trigger once the foreclosure sale has taken place and the property is sold to the mortgagee.[63]  As set forth in *Crichlow*, "[i]t is uniformly held that the proper execution of the memorandum of sale terminates the mortgagor's equity of redemption."[64]  "In other words, what is sold at the foreclosure sale is the equity of redemption and that is sold as of the execution of the memorandum of sale."[65]  As the requirements set forth in Section 15A only take effect after the memorandum of sale is executed and as the execution of the memorandum of sale concludes the foreclosure process, Section 15A cannot be one of the statutes relating to the foreclosure of mortgages by the exercise of a power of sale.[66]

Moreover, the requirements set forth in Section 15A only take effect if the property is sold to the mortgagee at the foreclosure sale.[67]  Section 15A sets forth no requirements, whatsoever, should a property be purchased by a disinterested third party at the foreclosure sale.[68]  As such,

---

[60] *Id.* at 423-24.
[61] *Id.* at 431.
[62] *Id.* at 431.
[63] G.L. c. 244, § 15A.
[64] *In re Crichlow*, 322 B.R. 229, 237-38 (Bankr.D.Mass. 2004).
[65] *In re Hall*, 188 B.R. 476, 482 (Bankr.D.Mass. 1995); *see also Pilok v. Bednarski*, 230 Mass. 56,57 (1918).
[66] *See* G.L. c. 244, § 15A.
[67] G.L. c. 244, § 15A.
[68] *Id.*

where Section 15A only applies in certain circumstances, it defies logic that Section 15A would be included in the statutes relating to foreclosure by the exercise of the power of sale and thus requiring strict compliance. Thus, although BONYM has complied with the requirements set forth in Section 15A, even if the Court finds that BONYM has not established its compliance with the terms therein, this would not void BONYM's foreclosure. As such, BONYM is entitled to judgment as a matter of law.

### 2. BONYM is entitled to Judgment as a Matter of law on its Claim for Possession.

As the record demonstrates, BONYM has established its *prima facie* case for possession after a foreclosure sale of the Property and has proven the essential elements of its claim. In *Bank of New York v. Bailey*, the Supreme Judicial Court held that "[i]n a summary process action for possession after foreclosure by sale, the plaintiff is required to make a *prima facie* case showing that it obtained a deed to the property at issue and that the deed and affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded."[69] Here, BONYM has done this by demonstrating through the documentary evidence that RCS complied with Massachusetts law in conducting its foreclosure sale. Further, the Foreclosure Deed and Affidavit establish that BONYM's legal title was acquired in compliance with Massachusetts law and the terms of the Paiva Mortgage and that BONYM is the true and lawful owner of the Property.[70]

BONYM has established that it was the mortgagee of record of the Paiva Mortgage at the time the Notice of Sale was published; that it was the holder and owner of the Paiva Note at the time of the foreclosure as required by *Eaton* and that RCS complied with G.L. c. 244, § 14 in noticing the foreclosure sale.[71, 72] As such, BONYM has demonstrated its *prima facie* case for

---

[69] *Bailey*, 460 Mass. 327, 336 (2011).
[70] *See* Exhibit U of the RCS Affidavit.
[71] *See Serra v. Quantum Servicing Corp.*, 2012 WL 3548037, at *16-17 (D. Mass. Aug. 15, 2012).
[72] *See* Exhibits D, N and U of the RCS Affidavit.

possession after a foreclosure sale, which Paiva has failed to controvert by showing a genuine issue of material fact.[73]  Accordingly, BONYM is entitled to summary judgment on its claim for possession.[74]

### 3.      BONYM is entitled to a Writ of Assistance.

BONYM is entitled to a Writ of Assistance, pursuant to G.L. c. 239 and the All Writs Act, 28 U.S.C. § 1651, after an Order granting summary judgment in its favor on its claim for possession of the Property.  Following an Order directing Paiva, including those that reside under him, to vacate the Property and authorizing the United States Marshal Service or local law enforcement, including a constable specially appointed by this Court, to take any and all necessary steps to obtain possession of the Property, including physically removing Paiva and his personal property from the Property.  In further support, BONYM states as follows:

As the owner of record, BONYM is entitled to Possession of the Property.  Pursuant to G.L. c. 239, § 3, after obtaining judgment on its claim for possession of the Property, BONYM will be entitled to an execution or writ allowing it to enforce its judgment on the Plaintiff.  G.L. c. 239, § 3 ("if the court finds that the plaintiff is entitled to possession, he shall have judgment and execution for possession and costs . . .").

Additionally, federal law empowers this Court to issue a writ in furtherance of an Order granting judgment in favor of BONYM on its claim for possession of the Property:

> The Supreme Court and all courts by Act of Congress may issue all
> writs necessary or appropriate in aid of their respective
> jurisdictions and agreeable to the usages and principles of law."

---

[73] *Fed. Nat'l Mortg. Ass'n v. Hendrick*s, 463 Mass. 635, 642-43 (2012).
[74] *See Maldonado v. AMS Servicing, LLC*, 2012 WL3779164, at *3-4 (D.Mass. Aug. 30, 2012); *see Shapiro v. Aurora Loan Services, LLC*, 2013 WL 1149929, at *4 (D.Mass March 18, 2013).

28 U.S.C. § 1651(a); s*ee United States v. New York Tel. Co.*, 434 U.S. 159, 172-73

(1977); *United States v. Friedman*, 143 F.3d 18, 22 (1st Cir. 1998) (authority for district court to

issue an order needed to enforce a prior order is found in the All Writs Act); *Maldonado v. AMS*

*Servicing LLC*, 11-cv-40044-TSH (D.Mass. Dec. 14, 2012) (granting application for Writ of

Assistance in favor of foreclosing owner's servicing agent).

As the Supreme Court has held:

> This Court has repeatedly recognized the power of a federal court
> to issue such commands under the All Writs Act as may be
> necessary or appropriate to effectuate and prevent the frustration of
> orders it has previously issued in its exercise of jurisdiction
> otherwise obtained: 'This statute has served since its inclusion, in
> substance, in the original Judiciary Act as a "legislatively approved
> source of procedural instruments designed to achieve 'the rational
> ends of law.'"'" *Harris v. Nelson,* 394 U.S. 286, 299, 89 S.Ct.
> 1082, 1090, 22 L.Ed.2d 281 (1969), quoting *Price v. Johnston,* 334
> U.S. 266, 282, 68 S.Ct. 1049, 1058, 92 L.Ed. 1356 (1948).

*New York Tel. Co.*, 434 U.S. at 172.

Accordingly, BONYM requests that this Court order Paiva and those residing under him

to vacate the Property and remove all personal belongings and direct the Clerk of Court to issue a

Writ of Assistance in favor of BONYM.

**4.      BONYM is entitled to Summary Judgment on Paiva's claim for Breach of the
Power of Sale.**

Paiva asserts that BONYM's foreclosure was not conducted in strict compliance with the

statutory power of sale incorporated into the Paiva Mortgage.  This claim must be rejected as a

matter of law as Paiva cannot meet his burden of establishing a genuine issue of material fact

with respect to his claim for alleged breach of the power of sale by BONYM.

As set forth *supra*, contrary to Paiva's baseless assertions, BONYM's foreclosure was

conducted in compliance with Massachusetts statutory law and the terms of the Paiva Mortgage

as well as the Supreme Judicial Court's recent decisions on Massachusetts foreclosure law.[75]
The record establishes that BONYM had standing to foreclose as it was the mortgagee of record
of the Paiva Mortgage and the holder and owner of the Paiva Note at the time that it published its
Notice of Sale and that all requisite notices were sent in compliance with G.L. c. 244, §§ 14, 17B
& 35A.[76, 77]  Further, the record establishes the Notice of Right to Cure was sent by
Countrywide, the servicer for Mortgage Electronic Registration Systems, Inc., as nominee for
Countrywide Home Loans, Inc., the mortgagee at the time the Notice of Right to Cure was sent,
and that the Notice contained the information required by the terms of the Paiva Mortgage.[78]  As
such, Paiva's claim that BONYM breached the statutory power of sale is without merit as a
matter of law and, as such, judgment should issue in favor of BONYM.

5.  **BONYM is entitled to Summary Judgment on Paiva's claim with regard to
    BONYM's alleged failure to comply with Section 15A.**

Paiva asserts that G.L. c. 244, § 15A is one of the statutes relating to the foreclosure of
mortgages by the exercise of the power of sale.  This claim must be rejected as a matter of law
because Paiva cannot meet his burden of establishing a genuine issue of material fact with
respect to BONYM's alleged failure to comply with Section 15A.  As set forth *supra*, Section
15A is a post-foreclosure requirement that cannot be included as part of the power of sale and, as
such, strict compliance with the requirements set forth therein is not required.

The foreclosure process ends upon the execution of the Memorandum of Sale.[79]  The
requirements of Section 15A do not take effect until after the Memorandum of Sale has been

---

[75] *See Ibanez*, 458 Mass. 637; *Eaton*, 462 Mass. 569; *Hendricks*, 463 Mass. 635; *Matt*, 464 Mass. 193; *Schumacher*,
467 Mass. 421.
[76] *Ibanez*, 458 Mass. at 648; *Eaton*, 462 Mass. at 584-86; *see also Schumacher*, 467 Mass. at 430-31; *McKenna v.
Wells Fargo Bank, N.A.*, 693 F.3d 207, 215 (1st Cir. 2012).
[77] *See* Exhibits D, N and S of the RCS Affidavit.
[78] *See* Exhibit E of the RCS Affidavit.
[79] *See In re Crichlow*, 322 B.R. at 237-38; *see also In re Hall*, 188 B.R. at 482.

executed and the property has been sold to the mortgagee.[80]  Like G.L. c. 244, § 35A, a statute that includes pre-foreclosure activity which is not part of the power of sale,[81] the post-foreclosure requirements set forth in Section 15A must also be excluded from the power of sale.

Here, BONYM complied with the requirements of Section 15A by sending the post-foreclosure notice of conveyance to the occupants of the Property, the Town of Berkley Tax Collector and the Town of Berkley Water and Sewer Department.[82]  As Section 15A is not part of the power of sale, the failure to strictly comply with the requirements set forth therein would not void the foreclosure.  As such, Paiva's claim that BONYM failed to strictly comply with the requirements set forth in Section 15A is without merit as a matter of law and, as such, judgment should issue in favor of BONYM.

6.      **BONYM is entitled to Summary Judgment on its claims for Breach of Contract and is entitled to a Deficiency Judgment.**

BONYM, through documentary evidence, has established that it is the holder and owner of the Paiva Note and that Paiva is in default under the terms set forth in the Paiva Note and Mortgage and, as such, that Paiva is in breach of the Mortgage loan contract.  Thus, BONYM has satisfied its burden of demonstrating that there is no genuine issue of material fact with regard to its claim for breach of contract.

 Paiva is in default of the terms of the mortgage loan contract and is due for the September 1, 2008, payment.  To prevail on a claim for breach of contract, BONYM must prove "that there was a valid contract, that [Paiva] breached its duties under its contractual agreement, and that the breach caused [BONYM] damage."[83]  It is undisputed that on February 21, 2007,

---

[80] G.L. c. 244, § 15A.
[81] *See Schumacher*, 467 Mass. at 430-31.
[82] *See* Exhibit 3 of the Linehan Affidavit.
[83] *Bosque v. Wells Fargo Bank, N.A.*, 762 FSupp.2d 342, 351 (D.Mass. 2011).

Paiva executed and delivered a promissory note to Countrywide Home Loans, Inc. wherein he agreed to pay the original principal amount of three hundred eighty-one thousand six hundred and 00/100 ($381,600.00) dollars, plus interest in monthly instalments over a term of thirty years.[84] Further, the documentary evidence, including the original Paiva Note and the Noteholder Affidavit, establishes that BONYM is the true and lawful holder and owner of the Paiva Note.[85] It is also undisputed that Paiva is in default under the terms of the mortgage loan contract due to his failure to make the payment due on September 1, 2008, and all subsequent payments.[86] Paiva's default constitutes a breach of the contractual obligations set forth in the Paiva Mortgage Loan contract and, as such, BONYM is entitled to summary judgment on its claim for breach of contract.

Moreover, in order to assert a claim for a deficiency judgment, pursuant to G.L. c. 244, §§ 14 & 17B, BONYM must demonstrate that Paiva was sent a copy of the Notice of Mortgagee's Sale of Real Estate as well as a Notice of Intent to Pursue Deficiency After Foreclosure Sale. Here, On March 24, 2014, RCS sent Paiva a Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency After Foreclosure of Mortgage that informed Paiva of the April 15, 2014 foreclosure sale date, informed Paiva that he may be liable for a deficiency after the foreclosure sale and included a copy of the Notice of Mortgagee's Sale of Real Estate.[87]

The total debt owed under the Paiva Note and Mortgage at the time of the foreclosure sale was five hundred thirty-two thousand one hundred thirty-eight and 38/100 ($532,138.38) dollars. The foreclosure sale of the Property resulted in proceeds in the amount of three hundred forty thousand and 00/100 ($340,000.00) dollars. Further, the documentary evidence establishes

---

[84] *See* Exhibit B of the RCS Affidavit.
[85] *See* Exhibits B and N of the RCS Affidavit.
[86] *See* Exhibit E of the RCS Affidavit.
[87] *See* Exhibit S of the RCS Affidavit.

that RCS fully complied with the notice requirements set forth in G.L. c. 244, §§ 14 and 17B. As such, BONYM is entitled to a Deficiency Judgment in the amount of one hundred ninety-two thousand one hundred thirty-eight and 38/100 ($192,138.38) dollars, plus interest, costs, and attorney fees which continue to accrue daily.

## V.    CONCLUSION

BONYM has met its burden of making a *prima facie* showing of entitlement to summary judgment on the claims set forth in the Plaintiff's Complaint as well as on its counterclaims. Paiva has failed to plead specific facts, supported by documentary evidence, that raise a genuine issue of material fact. BONYM respectfully request that this Court grant its Motion for Summary Judgment on BONYM's claim for Possession of the Property; on BONYM's claim for a Deficiency Judgment in its favor, and issue a Writ of Assistance pursuant to G.L. c. 239 § 3 and the All Writs Act, 28 U.S.C. § 1651 following an order granting summary judgment in favor of BONYM on its claim for possession and for such other and further relief as this Court may deem just and proper.

Respectfully Submitted,
The Bank of New York Mellon fka the Bank of New York as Trustee for the Certificate holders of CWALT, Inc. Alternative Loan Trust 2005-48T1, Mortgage Pass-Through Certificates, Series 2005-48T1
By and through their counsel,

Dated: February 27, 2015

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq. (BBO# 635118)
John A. Doonan, Esq. (BBO# 547838)
Stephen M. Valente, Esq. (BBO# 663118)
Brian C. Linehan, Esq. (BBO# 690437)
100 Cummings Center, Suite 225D
Beverly, MA  01915
Tel: (978) 921-2670
rjl@dgandl.com