UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID PAIVA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-14531-ADB |
| | * | |
| THE BANK OF NEW YORK MELLON, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

August 11, 2015

BURROUGHS, D.J.

I.   **Background**

Plaintiff David Paiva ("Paiva") seeks to void the foreclosure sale of his home in Massachusetts (the "Property"), conducted by Defendant Bank of New York Mellon ("BONYM") on April 28, 2014. BONYM, the lender at the time of the foreclosure sale, also purchased the Property in foreclosure. Paiva, who has continued to live in the Property since the foreclosure, has not made a mortgage payment since 2008 and does not dispute that he is in default on the mortgage.

In his two-count complaint, Paiva alleges two independent grounds for voiding the foreclosure sale. [Dkt. 1-4.] Count I alleges that the foreclosure did not strictly comply with paragraph 22 of the mortgage because the notice of default required by that paragraph was sent by the servicer of the loan, rather than by the lender. Paiva claims that this violated the statutory power of sale under Massachusetts law, which requires a foreclosing bank to "comply with the terms of the mortgage," G.L. c. 183, § 21. Controlling case law requires strict compliance with paragraph 22 of the mortgage, and Paiva argues that this standard was not satisfied by the loan

servicer's sending of the notice of default.

Count II alleges that BONYM failed to notify "the office of the assessor or collector of taxes of the municipality in which the premises are located" within 30 days of conveying title, as required by G.L. c. 244, § 15A ("§ 15A"). BONYM notified the tax collector by letter dated February 12, 2015, more than nine months after the foreclosure sale. [Dkt. 20-1, Ex. 3.] Paiva argues that § 15A is a "statute[] relating to the foreclosure of mortgages" pursuant to the statutory power of sale, G.L. c. 183, § 21, and that, as with paragraph 22 of the mortgage, strict compliance with § 15A is required. He further argues that the proper remedy under either count of his complaint is to void the foreclosure.

In its counterclaim, BONYM alleges five counts, all of which turn on the validity of the foreclosure. [Dkt. 8.] BONYM seeks a judgment for the difference between the total amount owed by Paiva as of the date of the foreclosure sale and the sale price—a deficiency of approximately $192,000.00. BONYM also seeks a judgment for possession and a writ of assistance from the Court.

By agreement of the parties, Paiva and BONYM filed cross-motions for summary judgment before conducting discovery in this case. Following careful consideration of the parties' briefs and further argument presented at a hearing conducted on August 6, 2015, the Court concludes that there is no genuine dispute as to any material fact and that Paiva is entitled to judgment as a matter of law on both counts of his complaint. The Court stated its reasons for this ruling on the record at the hearing and supplements those reasons herein.

**II.    Discussion**

    **A.    Legal Standard – Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material" fact is one that "might affect the outcome of the suit under the governing law." Id. The moving party has the burden of proving that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

    **B.    Count I: Alleged Failure to Comply with Paragraph 22 of the Mortgage**

The parties' briefs identify only one purportedly disputed fact in this case, which relates to Count I of the complaint: the controlling date of an assignment of the mortgage from the original lender, MERS as nominee for Countrywide Home Loan Inc. ("Countrywide"), to BONYM. [Dkt. 22, ¶ 4.] The Court, however, finds that this is not a genuine issue of material fact that would preclude summary judgment because at the hearing, BONYM acknowledged that as of May 19, 2008—the date of Countrywide's notice of default to Paiva—BONYM was the lender and Countrywide was the servicer of the loan.[1]

Paragraph 22 of the mortgage sets forth, in relevant part, the following requirements for a notice of default:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date

---

[1] If Countrywide were still the lender as of May 19, 2008, then there would be no violation of the requirement in paragraph 22 of the mortgage that the lender send the notice of default.

3

> specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.

[Dkt. 19-1, ¶ 22.]

Paiva submits that Countrywide's notice of default did not satisfy the requirements of paragraph 22 of the mortgage, not because any of the required substance was missing from the notice, but because the notice should have come from BONYM as the lender, rather than from Countrywide as the servicer of the loan. BONYM responds that the word "Lender" in paragraph 22 should be read to include the servicer of the loan, and thus, the fact that Countrywide sent the notice of default to Paiva did, in fact, comply with the requirement that "<u>Lender</u> shall give notice to Borrower" of the default and action required to cure the default. [Dkt. 19-1, ¶ 22 (emphasis added).]

The language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower: "Lender" must do so. The Court agrees with Paiva that Countrywide's notice of default did not strictly comply with paragraph 22 of the mortgage, as required under the statutory power of sale and under the Massachusetts Supreme Judicial Court's ("SJC") case law. <u>See</u> G.L. c. 183, § 21 (requiring a foreclosing bank to "comply with the terms of the mortgage"); <u>U.S. Bank Nat. Ass'n v. Ibanez</u>, 458 Mass. 637, 647 (2011) (the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to); <u>see also</u> <u>Pinti v. Emigrant Mortgage Company, Inc.</u>, 33 N.E.3d 1213, 1226 (2015) (strict compliance with the notice of default required by paragraph 22 is necessary in order for a foreclosure sale to be valid).

4

Paragraph 22 specifically states that "Lender shall give notice to Borrower . . . ." Significantly, it does not say that "Lender or the servicer of the loan shall give notice to Borrower . . . ." Nor is the term "Lender" defined in the mortgage to include the servicer of the loan. Rather, the mortgage defines "Lender" only as "Countrywide Home Loans, Inc." [Dkt. 19-1, at 6.] As discussed above, although Countrywide was the original lender under the mortgage, the parties agree that by the time Countrywide sent the notice of default to Paiva, Countrywide had assigned its interest to BONYM, which thereby became the lender. Thus, strictly construing paragraph 22 of the mortgage, BONYM, and not Countryside, had to send the notice of default to Paiva.

Further, this approach is consistent with the SJC's recent decision in Pinti, which held that a foreclosing bank's "strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid," and that the bank's "failure to strictly comply rendered the sale void." 33 N.E.3d at 1226. The Court cites Pinti despite the SJC's decision to give it only prospective effect. Id. at 1227. Given that BONYM purchased the Property in foreclosure, and that the Property has not changed hands to any third parties, the SJC's concern over the "possible impact that our decision may have on the validity of titles" is attenuated here. Additionally, the cross-motions for summary judgment were fully briefed before Pinti was issued on July 17, 2015. As Paiva was already advancing the same argument regarding strict compliance with the paragraph 22 requirements that the SJC adopted in Pinti, it would be inequitable to deny him the benefit of that decision. Further, the Court reads Pinti as a statutory interpretation of the power of sale, G.L. c. 183, § 21, and an extension of the SJC's prior ruling in Ibanez, rather than a reversal of course.

Because the Court finds that Countrywide's notice of default did not strictly comply with the requirements of paragraph 22 of the mortgage, the foreclosure sale is void.[2]

### C. Count II: Failure to Comply with G.L. c. 244, § 15A

There are no disputed facts pertaining to Count II of the complaint. The parties agree that BONYM did not strictly comply with § 15A, which requires a foreclosing bank to notify the tax collector (among other third parties) of a foreclosure sale within 30 days of conveying title. G.L. c. 244, § 15A. Here, BONYM did not make the required notification until more than nine months after the foreclosure sale. [Dkt. 20-1, Ex. 3.] Paiva argues that this lapse invalidates the foreclosure. BONYM responds that it does not because, in its view, § 15A is not among the "statutes relating to the foreclosure of mortgages" pursuant to the statutory power of sale, G.L. c. 183, § 21, with which strict compliance is required for a foreclosure to be valid, largely because the notification under § 15A isn't required until after the foreclosure is complete.

The Court concludes that under several SJC decisions, strict compliance with § 15A is required, and the consequence of non-compliance is the invalidation of the foreclosure sale. See U.S. Bank Nat. Ass'n v. Schumacher, 467 Mass. 421, 432 (Gants, J., concurring) ("Where a

---

[2] In reaching its conclusion that the notice of default did not strictly comply with the paragraph 22 requirements, the Court declines to follow the unreported holding in Federal National Mortgage Association v. Rogers, No. 13-ADMS-10025, 2015 WL 2000845 (Mass. App. Div. Apr. 7, 2015). In Rogers, the appellate division for the state district court held that a mortgage servicer's sending of a notice to cure satisfied the requirements of paragraph 22 of the mortgage. However, Rogers pre-dated, by several months, the SJC's decision in Pinti, in which the SJC mandated strict compliance with the notice of default required by paragraph 22. It is not at all clear that the appellate division in Rogers applied the same standard of strict compliance that was announced in Pinti. For example, the court in Rogers explained that "[t]he obvious purpose of . . . paragraph 22 of the mortgage . . . is to allow the borrower opportunity to cure default and avoid foreclosure. . . . This purpose was fulfilled by the loan servicer, which was acting on behalf of the mortgagee, giving Rogers the required information." 2015 WL 2000845, at *4 (emphasis added). Thus, the court in Rogers appears to have focused more on the purpose of paragraph 22 than on its strict requirements. To the extent that Rogers applied a standard other than strict compliance, that decision is at odds with Pinti, as well as with the clear language of the mortgage in the instant case, and the Court therefore declines to follow Rogers.

defendant in the summary process action claims that the mortgage holder failed strictly to adhere to the requirements under the statutory power of sale set forth in G.L. c. 183, § 21, and the related requirements in G.L. c. 244, §§ 11-17C, proof of any violation of these requirements will void the foreclosure sale and, therefore, defeat the eviction.") (emphasis in original); see also Pinti, 33 N.E.3d at 1224; Eaton v. Fed. Nat. Mortgage Ass'n, 462 Mass. 569, 581 (2012); Ibanez, 458 Mass. at 646. BONYM points to no contrary case or other authority for the proposition that strict compliance with the requirements of § 15A is not required, and the Court is not aware of any such authority. Further, the language of § 15A itself supports the holding that it is a "statute[] relating to the foreclosure of mortgages" with which strict compliance is required. Section 15A employs the mandatory language "shall," corresponds to a particular property (namely, the "mortgaged premises"), and sets a specific deadline of 30 days for compliance. G.L. c. 244, § 15A.[3]

---

[3] At the hearing, BONYM pointed out that there are a number of provisions within G.L. c. 244, §§ 11-17C (the range of statutes cited by Justice Gants in his concurring opinion in Schumacher), where non-compliance clearly could not void an individual foreclosure. For example, G.L. c. 244, § 14A, requires the commissioner of the division of banks to maintain a foreclosure database to be used to generate an annual report. It does not seem likely that a failure to maintain the database or to produce the annual report would be construed as a "strict compliance" failure that would require the invalidation of an otherwise proper foreclosure. See also G.L. c. 244, § 17A (establishing a two-year limitations period for certain actions relating to foreclosure sales). BONYM reconciles these sorts of provisions and Justice Gants's language regarding strict compliance by pointing to his use of the words "related requirements" and arguing that strict compliance is only required with regard to those portions of G.L. c. 244, §§ 11-17C, that are "related" to the statutory power of sale set forth in G.L. c. 183, § 21. Even assuming, arguendo, that BONYM is correct that Justice Gants did not mean to require strict compliance with every provision within G.L. c. 244, §§ 11-17C, it would still be left to this Court to determine whether § 15A is "related" to the statutory power of sale and therefore must be strictly adhered to for a valid foreclosure. The Court concludes, given the absolute nature of the language used by Justice Gants, the mandatory language of § 15A ("shall"), the fact that § 15A is specific to each individual foreclosure rather than a more general directive such as the requirement to maintain a database, and the fact that § 15A sets forth a specific deadline of 30 days, that, at least until further guidance from the state courts, strict adherence with § 15A is required.

All of this being said, the Court acknowledges the apparent unfairness to BONYM of voiding the foreclosure sale, given that Paiva has now been living in the Property for many years without making any payments on his mortgage. Under the relevant Massachusetts statutes and case law governing foreclosure sales, however, this result is mandated by BONYM's failure to strictly comply with the pre-foreclosure notice of default required by paragraph 22 of the mortgage and the post-foreclosure notice to the tax collector required by G.L. c. 244, § 15A.

### III.     Conclusion

For the above reasons, BONYM's Motion for Summary Judgment [Dkt. 16] is <u>DENIED</u>, and Paiva's Cross-Motion for Summary Judgment [Dkt. 21] is <u>GRANTED</u>. The Clerk is directed to enter judgment for Paiva pursuant to Fed. R. Civ. P. 58(a) on both counts of his complaint and to close this action. The foreclosure sale is void for the reasons discussed in this opinion and at the hearing. As Paiva has not demonstrated that any additional relief is warranted, however, his request for damages, costs, interest, and attorney fees, is denied.

**SO ORDERED.**

Dated: August 11, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE